JAMES B. DUKE

*v.*

LILIAN N. DUKE and FRANK T. HUNTOON.

[Decided May 3d, 1906.]

1. On a husband's petition for divorce, evidence *held* to establish adultery on the part of the wife with the party charged as co-respondent.

2. In such case, where the party charged as co-respondent intervenes as provided under the Divorce act (*Rev. 1902; P. L. 1902 p. 506 § 14*), he is liable to the husband for the payment of his costs and counsel fees incurred in prosecuting the suit.

On petition for divorce on the ground of adultery charged with Frank T. Huntoon, who appeared under the statute and was made a defendant. Final hearing on petition, answer and proofs.

For previous proceedings in this case, see *Duke* v. *Duke,* *70 N. J. Eq. (4 Robb.) 135, 149.*

This cause was heard on the 23d, 26th and 27th of April, and on the 2d and 3d of May, 1906, and a judgment at once pronounced in favor of the petitioner and against the defendant, and on the 4th of May a decree was advised accordingly.

*Mr. Richard V. Lindabury, Mr. Alvah A. Clark,* and *Mr. Junius Parker* and *Mr. W. W. Fuller* (both of the New York bar), for the petitioner.

*Mr. Samuel Kalisch* and *Mr. Chauncey G. Parker,* for the defendant Lilian Duke.

*Mr. Alan H. Strong,* for Mr. Huntoon.

PITNEY, V. C.

An appeal having been taken, I am asked to give my reasons for that decree for use on the hearing of the appeal.

To this end I will give a short history of the cause itself.

The petition was verified by the petitioner on the 31st day of August, 1905, and was filed on the 2d day of September, and a copy served on that day on the defendant at her residence in the city of New York.

Shortly afterward she moved to have the service set aside on the ground that the court could acquire no jurisdiction of her by extraterritorial service, because her husband was not a resident of the State of New Jersey.

That motion was disposed of against the petitioner, and on the 2d of November, 1905, she filed a plea to the jurisdiction, which plea, after hearing, was overruled on December 22d, as reported in *70 N. J. Eq. (4 Robb.) 135.* A motion to stay the proceedings pending an appeal from that order was also overruled, as reported in *70 N. J. Eq. (4 Robb.) 149,* and that action by this court was sustained by the court of errors and appeals.

On the 19th day of January, 1906, an answer was filed by Mrs. Duke, denying the adultery charged in the petition, and combining therewith a cross-petition against the petitioner charging him with adultery with certain persons named.

This cross-petition was answered by Mr. Duke on the 26th of January.

In the meantime Mr. Huntoon, the co-respondent named in the original petition, applied on the 26th day of October, 1905, and obtained an order to intervene as defendant, under the fourteenth section of the act concerning divorces. *P. L. 1902 p. 502* (at *p. 506*).

In March, 1906, application was made by Mrs. Duke, by petition, for an order against her husband for a counsel fee, and to her petition in that behalf the husband filed an elaborate verified answer, which was afterwards, at the final hearing, put in evidence against him by his wife and the co-respondent.

The cause was set down for hearing on the 23d, 26th and 27th of April, and the 2d, 3d and 4th of May, giving the defendants

ample time to prepare their defense after the complainant's case was made.

On the 23d of April all the parties appeared with their counsel, and the taking of testimony was proceeded with all that day, and was then adjourned over to the 26th.

At the opening of the court on that day neither of the parties defendant appeared in person. No reason was ever offered why Mr. Huntoon did not appear, nor was any postponement asked by reason of his absence. Counsel for Mrs. Duke stated, and offered to prove, that she was confined to her house by illness, and asked for a postponement on that account. In my discretion I declined to postpone, and directed the taking of testimony to proceed on the part of the petitioner, but did not compel the defendant to cross-examine in the absence of the defendants until they should have an opportunity to confer with her, or it should appear that she was able to appear in court.

By consent of all the counsel I instructed a competent physician to visit Mrs. Duke, ascertain her physical condition, and report it to the court. This was done, and the physician next morning, April 27th, reported, under oath, that he found her somewhat indisposed, but had no doubt that she was entirely able to attend court on that day. Neither she nor Mr. Huntoon, so far as I could observe, appeared further in person, and neither was offered as a witness.

The taking of testimony proceeded on the days named until the afternoon of May 3d, when, as before stated, I at once pronounced in favor of a decree for the petitioner, and advised a decree against the defendant Huntoon for costs and counsel fees.

This latter was done in accordance with a practice which I understood to have the sanction of the chancellor, and seems to me according to reason, and I believe is according to the English practice. The defence was conducted jointly and in concert by both of the defendants, so that in proving a case against the female defendant the petitioner also proved it against the corespondent. There was no allegation of a marital offence committed with any other person. The cross-petition was abandoned.

The defendant Huntoon claimed at the hearing the benefit of

the position of a full defendant, and on his objection certain depositions taken in North Carolina were, after full argument, excluded because he did not have notice of their taking. The order for costs against him carefully excluded the costs of the hearing on the plea to the jurisdiction.

Coming now to the merits of the case, the following historical facts appear:

[Here follows an examination of the evidence, concluding with a finding of the defendants guilty, omitted by the consent of the vice-chancellor.]

[The remainder of the opinion is a transcript of the stenographer's notes.]

One other matter which was disposed of by me at the beginning of the defendant's case may be mentioned here. I have stated that the defendant Huntoon applied for leave to intervene in October, and prior to the filing of the plea to the jurisdiction of the court. Mr. Huntoon had no notice of the trial of that issue, and before any production of evidence on the part of the defence on the final hearing on the merits, his counsel, Mr. Strong, moved the court, on behalf of Mr. Huntoon, to dismiss the petition on the ground "that the court has no jurisdiction to entertain it," because the complainant had offered no proof of the residence of either of the parties in the State of New Jersey, and there was no proof and the case did not show service of process within this state. And he argued that Huntoon had the right to set up in his defence that the court had no jurisdiction of Mrs. Duke, and that he (Huntoon) was not bound by the finding of this court upon the issue raised by the plea of want of jurisdiction.

Now, previous to the recent revised Divorce act a party charged as a *particeps criminis* in a suit for divorce based on adultery had no means of defending himself or herself against the charge of adultery, and a perfectly innocent man or woman might be wrongfully subjected to a *quasi* conviction of that offence without any opportunity to be heard. In fact, by perjured evidence, offered in an undefended case, such conviction might be, and probably was, often pronounced. The suit for divorce might have been collusive, and the procuration of the

divorce might in reality have been by consent. Now, this state of things was liable to work, and in many instances did work, an injustice against innocent persons. Now, the object of the statute was manifestly and notoriously to remedy that wrong. Hence the new section introduced into the statute, as follows:

"In actions for divorce, because of adultery, it shall be lawful for the chancellor, in his discretion, at any time before final decree, to allow any person charged in the pleading with committing adultery with either of the parties in the suit to intervene *for the purpose of defending himself or herself against the charge so made.*"

Now, here it is quite manifest that the purpose for which the defendant may intervene is limited to the defense against the charge. It seems to me quite clear that the intervenor has no right to challenge the jurisdiction of the court over the person of the real defendant. Besides, by intervening generally, as the defendant did in this case, without any protest as to the jurisdiction, he appeared generally and submitted himself to the jurisdiction of the court. And that intervention was made before the plea of the jurisdiction was interposed. Although he did not have notice of the trial of that plea, he is presumed to have kept a general watch on the progress of the cause, and if he had any desire or intention to question the jurisdiction of the court he might have added to his extremely short pleading a plea of that kind. I was unable, after hearing the very ingenious argument of Mr. Strong, to see the least merit in it, and subsequent reflection has not changed my view.

Mr. Lindabury—Now, if your honor please, we ask for judgment for costs against the co-respondent Huntoon.

The Court—I have already had occasion to examine that question, and by the advice of the chancellor, after submitting the matter to him, I gave judgment in a case similar to this for costs and counsel fee against the co-respondent, hence you are entitled to that judgment. It will not include, however, the cost of the proceedings to test the jurisdiction of this court. You will have costs against the co-respondent from the time he intervened, but not the costs of that issue of jurisdiction.

Mr. Lindabury—No, your honor; preparation of this case, trial of this case, which he did make by voluntarily coming into it.

The Court—In the case in mind a man came in afterward, and I gave the whole costs against him.

Mr. Strong—Does your honor care to hear from Mr. Huntoon's counsel.

The Court—I only tell you what I did after consultation with the chancellor. I will give you the name of that case now if you wish it.

Mr. Lindabury—I can see no reason why Mr. Huntoon should not pay all the costs made in the preparation of and trial of this issue. As one of my associates says, it is a saying in the South that "two dance in company, but one must pay the fiddler alone," and it would seem highly proper that Mr. Huntoon should occupy that situation. He is a man of very large income, great wealth, I am told, and he has put us——

The Court—That don't make any difference.

Mr. Lindabury—No, but he has helped to put us to great expense. We have been required, as your honor will remember, to pay the defendant, his co-partner in this defence and the. circumstances that led to it, $3,000.

The Court—I don't consider anything of that kind. I don't take that into consideration here, except as measuring the importance of the cause.

Mr. Lindabury—You are making an allowance to the petitioner in this case on account of the costs and on account of the counsel fees which he has incurred, and it strikes me that it is a matter that may be taken into account that the petitioner has been compelled to disburse that sum as one of the items of the prosecution of the cause, and one for which the defendant Huntoon is responsible. I ask that your honor allow us judgment against Huntoon for the taxable costs of the cause and for a counsel fee commensurate with the importance of the case.

The Court—Will you please mention the amount of counsel fee you think you ought to have?

Mr. Strong—Your honor understands me, of course, as insisting that no order should be made against Mr. Huntoon.

Mr. Lindabury—We think the allowance of counsel fee should not be less than $5,000.

Mr. Strong—It seems to me that the figure suggested is absurd, in the first place; but I started to say before, there is no authority in the court, by statute or otherwise, that I know of, to make any order whatever for the expenses of the suit, counsel fees or otherwise, against Mr. Huntoon, if it were a matter of discretion, nor has Mr. Huntoon in any way enhanced the costs of this suit. I desire to direct your honor's attention to that point. He has not appeared here and offered independently testimony such as to increase the burden of the petitioner's case. The proof which the petitioner has made in this case he was obliged to make if Mr. Huntoon had not appeared, and under such circumstances, where the appearance of the co-respondent has not aggravated the expense to the complainant, there seems to be no reason for the exercise of a discretion, if the court had a discretion, to impose upon the co-respondent any of the expenses which he would otherwise have incurred, would otherwise have incurred necessarily.

The Court—I think that when a man makes himself a defendant, under the statute he becomes liable for the petitioner's costs, and also for counsel fees. I think I will take into consideration the fact that the defendants did not go very far with their defence, Mr. Lindabury, not far enough to trouble you much.

Mr. Lindabury—They made us believe they were going to, and we prepared to meet it.

Mr. Strong—Gave you an awful scare, didn't we?

The Court—Well, I don't see how I can give less than I did to the other side earlier in the proceedings, but I think that is enough, Mr. Lindabury, $3,000. I will advise a counsel fee of $3,000, and the costs of the issue. If you waive the costs of the issue on the jurisdiction, if you omit it entirely, the whole thing will go against both defendants, but if you put those costs in, they can only go against the female defendant. However, you can frame your decree to suit yourself on that hereafter.

Mr. Lindabury—I ask that the costs of supplying copies of the testimony to both parties in the cause be included in the taxed costs.

The Court—The rule, as I recollect about that, is this: You see, the stenographer looks out for his pay from the parties who employ him, except as to one copy for the court, and you are entitled to recover one copy, supplied to your side, costs of one copy, and if you pay the whole of the court's copy, why, then you are entitled to recover for two copies, and the bill may be made out to you, Mr. Lindabury, just made out to Lindabury, Depue & Faulks, cost of one copy for counsel and cost of another copy for the court. Then all I do is to write across it "tax it in."

Mr. Lindabury—We have gotten three copies, and one has been furnished to the other side.

The Court—They must pay that. I have nothing to do with that. The stenographer looks to them for that, and looks to you for what he has furnished to you, but the court is entitled to one copy, and the rule is that each party must pay one-half of the copy furnished to the court, but if that one-half each in point of fact is not paid, and the successful party chooses to pay the whole of the court's copy, he may include that in his costs. You are not obliged to pay but one-half of that, and the stenographer may call on the counsel for the defendant to pay the half, but I suppose they would prefer that it be taxed in the petitioner's costs, but you are not obliged to do that. If you choose to do that, Mr. Lindabury, you can have both copies taxed in the costs of the complainant, but you are not obliged to do it. You are obliged to pay one-half, and you are entitled to have that one-half put in the bill of costs. If you think you cannot recover it, you don't want to take that plan. Perhaps you better take the half and let the counsel for the defendant pay their half.